RECEIVED
IN ALEXANDRIA, LA.

OCT - 4 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| LLOYD FLANNER | : | DOCKET NO. 3:11-0940 |
| VS. | : | JUDGE TRIMBLE |
| CHASE INVESTMENT SERVICES CORP., | : | MAGISTRATE JUDGE HAYES |

### MEMORANDUM RULING

Before the court is "Defendant's Motion for Summary Judgment" (R. #21) filed by J.P. Morgan Securities LLC, successor to Chase Investment Services Corporation ("JPMS") who seeks to have plaintiff's claims dismissed in their entirety with prejudice pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, JPMS seeks to dismiss plaintiff's discrimination claims under the Age Discrimination in Employment Act,[1] the Americans with Disabilities Act,[2] the Louisiana Employment Discrimination Law,[3] and the Family Medical Leave Act.[4]

### FACTUAL STATEMENT

Plaintiff, Lloyd Flanner was employed by JPMS as a Financial Advisor from August 2003 until August 9, 2010; he was 52 years old when JPMS hired him. Flanner was assigned to two JPMS

---

[1] 29 U.S.C. § 621.

[2] 42 U.S.C. § 12101.

[3] La. R.S. § 23:301(because of the similarity of federal and state discrimination laws, the dismissal of plaintiff's federal employment discrimination claims would necessarily result in the dismissal of plaintiff's state employment discrimination claims).

[4] 29 U.S.C. § 2601, et seq.

branches in Monroe, Louisiana (the Northside branch and the Fourth Street branch). As of November 1, 2009, Daniel Nowak was Flanner's supervisor; he was also supervised by Darren Olivio. As of May 2010, the manager of the Northside Branch was Ron Purdy and Purdy's supervisor was Karen Siudy Mardis. Flanner was not supervised by and did not report to the managers at the Bank's branches where he worked.

Even though he experienced no symptoms of heart disease, in December 2009 during a routine physical, Flanner was diagnosed with a heart condition. Due to his heart condition, Flanner requested and was granted medical leave under the Family Medical Leave Act ("FMLA") from January 12, 2010 through March 14, 2010. He also received disability payments during this leave. Flanner had heart surgery on January 12, 2010. On March 11, 2010, JPMS extended Flanner's FMLA leave through April 4, 2010; Flanner returned to his job as a Financial Advisor without restriction on April 5, 2010.

Around the end of May and/or the beginning of June, Flanner lent $25 to a JPMS bank customer who was also a friend. Flanner used his personal funds to purchase a $25 money order at the bank; the friend repaid Flanner the following day.

On July 28, 2010, Nowak met with Mardis and another District Manager to discuss issues regarding Financial Advisors. During this meeting, Mardis discussed and/or reported that Flanner had gone behind the teller line without a valid business reason. (Flanner objects to this statement as being hearsay and ambiguous). At some point in time, Nowak contacted his supervisor, Olivio, who recommended he speak with Purdy and Flanner. Nowak interviewed Purdy on July 29, 2010; Purdy informed Nowak that Flanner had gone behind the teller line in order to purchase a $25 money order for a bank customer; Assistant Branch Manager Kenya Green witnessed the incident. Nowak

2

interviewed Green who confirmed what Purdy told him.

On August 3, 2010, Nowak met with Flanner and requested that he write a statement with respect to the money order incident. Flanner wrote and signed a statement setting forth the events surrounding the money order. At some point, Nowak suspended Flanner; Flanner was terminated on August 9, 2010 for violating JPMS' Code of Conduct Section 6.2 which prohibits loaning money to a bank customer. Flanner maintains that his discharge was merely pretext for JPMS' unlawful discriminatory and defamatory termination.

Jason Tisor, who was 32 years old in August 2010 replaced Flanner at the Northside Branch and Howard Johnson, age 53 in 2010, replaced Flanner at the Fourth Street Branch. On September 2, 2010, JPMS filed a Form U5 regarding Flanner's termination.[5] On the Form U5 under Section 7(f)(1), JPMS indicated that Flanner was "discharged . . . after allegations were made that accused the individual of violating investment related statutes, regulations, rules, or industry standards of conduct."[6]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7] A fact is "material" if its existence or

---

[5] Such filing is required by regulations of the Financial Industry Regulatory Authority.

[6] JPMS exhibit D, Emmert Depo., p. 20 and Exhibit 10 attached thereto.

[7] Fed. R.Civ. P. 56(c).

nonexistence "might affect the outcome of the suit under governing law."[8] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[9] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[10] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[11] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[12] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[13] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[14]

## LAW AND ANALYSIS

In his complaint, Flanner asserts that he was discriminated against based on his age, his perceived disability and/or that his termination from employment constituted unlawful interference

---

[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[9] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[10] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[11] Anderson, 477 U.S. at 249.

[12] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[13] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[14] Anderson, 477 U.S. at 249-50.

with his FMLA rights and/or retaliation under the FMLA.

*Age Discrimination*

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from firing an employee "because of such individual's age."[15] The ADEA provides in relevant part that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[16] To establish an ADEA claim, plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[17] Under McDonnell Douglas Corp. v. Green,[18] a plaintiff must first establish a prima facie case that:

(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.[19]

Applying the framework from McDonnell Douglas, "[a] plaintiff relying on circumstantial evidence must put forth a *prima facie* case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision."[20] If the employer

---

[15] 29 U.S.C. § 623(a)(1).

[16] 29 U.S.C. § 623(a)(1).

[17] Gross v. FBL Fin.Servs., Inc., 557 U.S. 167, 177-78, 129 S.Ct. 2343 (2009).

[18] 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).

[19] Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010).

[20] Berquist v. Washington Mut.Bank, 500 F.3d 344, 349 (5th Cir. 2007).

articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual.[21]

In determining whether the plaintiff's rebuttal precludes summary judgment, "[t]he question is whether [the plaintiff] has shown that there is a genuine issue of material fact as to whether this reason was pretextual."[22] A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[23]

JPMS maintains that Flanner's age discrimination claim fails as a matter of law because he cannot establish a *prima facie* case of discrimination and/or he cannot establish that JPMS's legitimate, non-discriminatory reason for its actions was pretext for age discrimination. JPMS first asserts that Flanner cannot establish discrimination because there were no other "similarly situated" employees engaged in "nearly identical" misconduct that suffered substantially disparate treatment. Flanner suggests that loaning a "nominal amount" of money is and was a normal occurrence; for example, other JPMS employees had purchased lunch for their co-workers and were paid back, but suffered no adverse consequences. The court finds that loaning money to co-workers for lunch is not nearly identical in nature to loaning money to a bank customer. Thus, Flanner's claims of disparate treatment must fail.

Flanner maintains that it is undisputed that he was replaced by someone younger than he.

---

[21] Jackson, 602 F.3d at 378-79, 129 S.Ct. 2351.

[22] Id.

[23] Id.

When he was terminated, Flanner was 59 and he was replaced by two individuals, Jason Tiser, age 32, and Howard Johnson, age 53. JPMS argues that even if this is sufficient to establish a *prima facie* case, it is insufficient to establish that Flanner's age was the "but for" cause for his termination from employment. Furthermore, JPMS contends that Flanner has offered no other evidence of perceived age discrimination, nor has Flanner offered evidence to genuinely dispute the legitimate reason for his termination.

The plain language of the ADEA requires that plaintiff establish that he was fired "because of" his age. The ordinary meaning of the ADEA's requirement that an employer took adverse action"because of" age is that age was the "reason that the employer decided to act."[24] To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.[25] Consequently, pursuant to § 623(a)(1), Flanner retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action.[26]

Flanner has failed to submit any summary judgment evidence that age was the "but-for" cause of JPMS's adverse action. Flanner relies solely on the fact that the two individuals who replaced him were younger than him as a basis for establishing a *prima facie case*. Flanner has presented no evidence of any disparaging comments based on his age and notably, the difference in Flanner's age (59) and that of Mr. Johnson (53) was not so disparaging to create an inference of age discrimination.

---

[24] See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701 (1993).

[25] See Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 652, 128 S.Ct. 2131, 2141-2142 (2008)(recognizing that the phrase, "by reason of," requires at least a showing of "but for" causation).

[26] Gross, 557 U.S. at 177.

There is absolutely no evidence to validate Flanner's claim of age discrimination. Hence, the court finds that Flanner has failed to establish that he was terminated because of his age.

Even though the court has determined that Flanner has failed to establish a *prima facie* case of age discrimination, we will further analyze plaintiff's claims and assume that he established a *prima facie* case solely for the purpose of our analysis to determine if JPMS terminated Flanner for a legitimate, non-discriminatory reason.

JPMS argues that it has articulated a legitimate, nondiscriminatory reason for Flanner's discharge, namely for violating Section 6.2 of the Code of Conduct. § 6.2 provides in pertinent part that "[y]ou may not borrow money (other than nominal amount) from or lend money to other employees, customers or suppliers, or act as a guarantor, co-signer, or surety or in any other similar capacity for customers, suppliers, or other employees."[27] There is no genuine issue of dispute that Flanner loaned $25 to a bank customer to purchase a money order.[28] Thus, JPMS maintains that Flanner violated company policy which constitutes a legitimate, non-discriminatory reason for plaintiff's termination from employment which shifts the burden back to plaintiff to produce evidence that the enforcement of the policy was a pretext, and that the real reason for his termination from employment was his age.[29]

Flanner relies on § 6.2(a) which provides an exception for relatives and friends which is as follows:

---

[27] Statement of Material Fact § 14.

[28] The bank customer was an acquaintance and/or friend of Flanner; he sent his secretary to the bank to cash a third party check. Because the bank could not cash the check, Flanner took money out of his own account to purchase the money order.

[29] See Collins v. Saia Motor Freight Lines, Inc., 144 Fed. Appx. 368, 373 (5th Cir. 2005).

>The foregoing limitations do not apply to:
>(a) borrowing from, or acting as guarantor, co-signer, or surety for, relatives or close personal friends (generally, friendships formed outside the context of any JPMC business relationship)....[30]

The court finds that this exception, which refers to "borrowing from, or acting as guarantor, co-signer, or surety for" does not apply to the circumstances of this case which involved loaning money to a bank customer.

JPMS remarks that Flanner has submitted no summary judgment evidence to prove the "close personal' friendship relationship between Flanner and Mr. Newman. In his deposition, Flanner testified that Mr. Newman was an attorney who would stop and talk with Flanner during his visits to the bank, and that Mr. Newman represented Flanner in a traffic violation.[31] JPMS further reiterates that Flanner's loaning money to Mr. Newman's secretary for a money order is not comparable to loaning money to a co-worker for lunch.

Alternatively, JPMS argues that Flanner has presented no evidence to suggest that JPMS did not believe this was the real reason for terminating Flanner's employment. Flanner relies on his own deposition wherein he testified that while he was out on disability, another JPMS employee, Melissa Foster, was told that JPMS was going to make changes at the bank, and she was asked if she would be interested in becoming a Financial Advisor (the same position held by Flanner).[32] [33] Flanner also relies on his understanding that Jason Tiser was studying for a test to become a

---

[30] Flanner's exhibit 5, Code of Conduct; see also R. #21-3, pp. 66-67.

[31] Plaintiff's exhibit G, Flanner Depo. pp. 163-164.

[32] JPMS exhibit A, Flanner depo., pp. 208-213.

[33] That alleged employee is no longer employed by JPMS.

Financial Advisor.[34] "An employer may base an employment decision on a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."[35] "A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.:[36] Simply disputing JPMS's business judgment is not enough to prove pretext without producing evidence that the reasons stated were false and pretextual.[37] Flanner has failed to establish that JPMS' reason was either false or unworthy of credence. The court finds that Flanner has failed to create a genuine issue of material fact for trial that discrimination was the real reason for his termination.

*Disability discrimination*

Flanner contends that he was terminated because of his disability or perceived disability. Flanner admits that upon his return to work, he did not have any physical impairment, and he returned to work without restriction.

To establish a claim for disability discrimination, Flanner must make out a *prima facie* case by showing that "(1) he suffers from a disability; (2) he is qualified for the job; (3) he was subject to an adverse employment action because of his disability; and (4) he was replaced by a non-disabled

---

[34] JPMS exhibit A, Flanner depo., p. 213.

[35] LeMaire v. Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007) citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)).

[36] Nasti v. CIBA Specialty Chems, 492 F.3d 589, 593 (5th Cir. 2007).

[37] Goree v. Commission Lincoln Parish Detention Center, 437 Fed.Appx. 329, 334 (2011) citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408 (5th Cir. 1999).

person or was treated less favorably than non-disabled employees.[38] Disability not only refers to a "physical or mental impairment that substantially limits one or more major life activities of such individual" but also "being regarded as having such an impairment."[39] This is established by proving discrimination "because of an actual or perceived physical or mental impairment whether or not the impairment is perceived to limit a major life activity."[40]

Flanner maintains that it is undisputed that he had a heart condition which required surgery followed by months of medical leave, and that he was replaced by employees who have no perceived disability. Thus, Flanner argues that this is sufficient to establish a *prima facie* case of discrimination. Flanner has submitted no summary judgment evidence of a disability, nor of a perceived disability. Furthermore, Flanner testified that he had no impairment prior to or after returning to work.[41] The court finds that Flanner has failed to create a genuine issue of material fact for trial as to his claims of discrimination based on a disability or perceived disability.

*Retaliation*

To establish a *prima facie* case of retaliation under the Family Medical Leave Act, Flanner must show that (1) he or "she was protected by the FMLA, and" (2) he or "she suffered an adverse employment decision; and either (3)(a) that [he or] she was treated less favorable than an employee who had not requested leave under the FMLA; or (b) the adverse decision was made because [he or]

---

[38] See Griffin v. United Parcel Serv.,Inc., 661 F.3d 216, 222 (5th Cir. 2011) citing Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007)); Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995).

[39] 42 U.S.C. § 12102(1)(a) and (c).

[40] 42 U.S.C. § 12102(3)(A).

[41] Statement of Material Fact ¶¶ 16, 22.

she took FMLA leave."[42]

JPMS notes that Flanner admits that JPMS did not interfere with Flanner's rights under the FMLA.[43] Furthermore, Flanner was restored to the same position he held prior to taking medical leave. Thus, JPMS submits that Flanner's claim is limited to a claim of retaliation under 29 U.S.C. § 2615(a)(2). JPMS contends that Flanner did not engage in conduct protected by the FMLA because he did not oppose any unlawful practices under the FMLA. 29 U.S.C. § 2615(1)(2) provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

The FMLA's protection against retaliation is not limited to periods in which an employee is on FMLA leave, but encompasses the employer's conduct both during and after the employee's FMLA leave.[44] When an employee claims that an employer has punished [him] for exercising his right to take FMLA leave, that claim is analyzed under the McDonnell Douglas framework.[45] Thus, if Flanner succeeds in making a *prima facie* case, the burden shifts to JPMS to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action. Once that is done, Flanner must show by a preponderance of the evidence that JPMS's reason is a pretext for retaliation.

Flanner remarks that it is not disputed that he was protected by the FMLA and that he suffered an adverse employment decision. Thus, Flanner contends that he need only prove that he

---

[42] Lushute v. Louisiana, 479 Fed.Appx. 553, 554 (5th Cir. 2012), citing Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 768 (5th Cir. 2001); see also Mauder v. Metro. Transit Autho. of Harris County, 446 F.3d 574, 583 (5th Cir. 2006).

[43] R. # 39-1, p. 9 at fn. 36.

[44] Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757 (5th Cir. 2001).

[45] Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999).

"was treated less favorably than an employee who had not requested leave under the FMLA" or his discharge "was made because []he took FMLA leave."[46] This does not require "an ultimate showing of liability" but only "enough evidence to require an employer to respond."[47] Flanner notes that he was suspended on August 3, 2010 and terminated a week later on August 9, 2010 just four months after he was engaged in protected activity. Thus, Flanner argues that coupling this time period with the stated reasons (violating the JPMS Code of Conduct, § 6.2) for his discharge is sufficient evidence to defeat summary judgment. The court finds that the temporal element of an adverse employment action four months after returning from taking FMLA leave is insufficient to establish a causal connection. Thus, Flanner has failed to establish a *prima facie* case of retaliation. Be that as it may, the court will further analyze Flanner's claim based solely on an assumption that he has established a *prima facie* case even though we have concluded otherwise. As such, the burden would shift to JPMS to articulate a legitimate nondiscriminatory or non-retaliatory reason for the employment action.

As previously determined, the court finds that JPMS has articulated a legitimate nondiscriminatory or non-retaliatory reason for terminating Flanner's employment. Flanner conceded that he loaned $25 to a bank customer, a clear violation of § 6.2 of the Code of Conduct. Thus, we conclude that JPMS has articulated a legitimate non-retaliatory reason for terminating Flanner's employment. Accordingly, Flanner's claim of retaliation will be dismissed.

*Defamation claim*

When a registered broker-dealer firm terminates the registration of a person associated with

---

[46] Lushute, supra.

[47] Grubb v. Southwest Airlines, 296 Fed. Appx. 383, 390 (5th Cir. 2008).

the firm, the broker-dealer firm must file with the Financial Industry Regulatory Authority ("FINRA") a Uniform Termination Notice known as a "Form U5". The broker-dealer firm must respond to questions regarding the reason for the individual's termination. On September 2, 2010, JPMS filed the Form U5 and reported that Flanner was "discharged . . . after allegations were made that accused the individual of violating investment-related statutes, regulations, rules, or industry standards of conduct." The Form U5 further explained that Flanner was discharged because he "used his personal funds to purchase a money order in the amount of $25 for the convenience of a bank customer."[48] The information is available both to the investment industry and the public at large.[49] Flanner maintains that when JPMS stated on the Form U5 its reason for his termination, such statement was defamatory because it was not made in good faith based on Flanner's position that his discharge was not legitimate but pretextual.

    The elements for a defamation claim are as follows:

    (1) a false and defamatory statement concerning another;
    (2) an unprivileged publication to a third party;
    (3) fault (negligence or greater) on the part of the publisher; and
    (4) resulting injury.[50]

    JPMS contends that the statement was not false and that the publication was privileged due to its duty to submit the Form U5 to FINRA. Flanner maintains that in order for the statement to be

---

[48] Statement of Material Fact 39.

[49] Flanner exhibit 10.

[50] Trentecosta v. Beck, 703 So.2d 552, 559 (La. 1997).

privileged, it must have been made in good faith.[51] To be in good faith one has to have "reasonable grounds for believing it to be true."[52] Flanner concedes that JPMS is entitled to a qualified privilege, but maintains that the privilege was lost because it was not made in good faith. Flanner bases his lack of good faith argument on his position that his discharge was not legitimate but pretextual. In other words, because JPMS's basis for terminating him was not legitimate, then the statement in the FormU5 was not made in good faith, thus, it was defamatory.

Heather Emmert, Director of Registration for JPMS, filled in the Form U-5 and made the statement on behalf of JPMS. She based the statement solely on the Recommendation for Termination[53] sent from the Human Resources Department. Flanner argues that if an investigation had been conducted into either the industry rules or the relationship between Flanner and Newman, JPMS would have known that there was no violation of any rule. Thus, Flanner submits that JPMS did not have reasonable grounds for believing the statement was true. Flanner relies on its position that he did not violate any industry standard of conduct.

JPMS maintains that the statement was true and therefore, not defamatory. JPMS relies on the deposition of Heather Emmert who testified that Flanner violated the industry standard of conduct of loaning money to a customer.[54] Flanner relies on Emmert's deposition testimony wherein

---

[51] See Watson v. Willis-Knighton Med. Ctr., 93 So.3d 855, 860 (La.App. 2 Cir. 2012)(in order to qualify as a privileged statement, it must be "made in good faith, on any subject matter in which the person communicating has an interest or in reference to which he has a duty, and to a person havng a corresponding interest or duty.")

[52] Id.

[53] Flanner exhibit 12, Emmert depo., p. 17-19.

[54] R. #21-2, ¶ 38; JPMS exhibit D, Heather Emmert depo., p. 20, R. #21-6.

15

testified that she is not alleging that Flanner violated an investment-related statute, or that he violated regulations or violated rules, only that he violated industry standards of conduct. Flanner contends that because he did not violate any industry standard of conduct, the court must deny JPMS's motion to dismiss this claim.

The court finds that Flanner violated § 6.2 of the Code of Conduct. Therefore, the statements made in the Form U5 are true and an absolute defense to Flanner's claim of retaliation. We further find that there is no evidence of malice or bad faith with respect to the statements made in Form U5. Therefore, Flanner's claims of defamation will be dismissed.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted in all respects dismissing with prejudice, all of plaintiff's claims of discrimination against defendant.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 4th day of October, 2013.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE